BANKS, Presiding Justice,
Dissenting:
¶ 28. I am compelled to dissent to the disposition of this case because it is my view that under the circumstances the grandmother is sufficiently imbued with the characteristics of a parent such that court interference with her consent is not warranted.
*836 ¶ 29. Though the majority relegates this discussion to a footnote because formal legal guardianship was never obtained, Mississippi has long recognized .that under the doctrine of in loco parentis, “in the place of a parent,” one assumes the status and obligations of a parent. The rights, duties, and liabilities of one standing in loco parentis, in fact, are the same as those of a natural parent. Farve v. Medders, 241 Miss. 75, 81, 128 So.2d 877, 879 (1961). Though, unlike other jurisdictions, see Ga. Code Ann. § 16 — 11—112(a)(1)(c) ( 1999); Mo Ann. Stat. § 188.028 (1996); N.D. Cent.Code § 14-02.1-03 (1997), our parental consent statute for abortions does not expressly list a person standing in loco parentis among those who may give consent to abortions, in several other statutes governing the welfare of minors, persons standing in loco parentis may give consent. See Miss.Code Ann. § 93-1-5 (1994) (obtaining marriage licenses); Id. § 37-49-5 (1996) (applying for educational loans); Id. § 41-19-205 (1993) (for admittance into mental and illness centers); Id. § 41-37-25 (1993) (before autopsies may be performed).
¶ 30. Whether the in loco parentis relationship exists is a matter of intent and depends upon the circumstances of the particular case. Id. We have before stated, however, that any person who “takes a child of another into his home and treats it as a member of his family, providing parental supervision, support, and education as if it were his own child, is said to stand in loco parentis.” W.R. Fairchild Constr. Co. v. Owens, 224 So.2d 571, 575 (Miss.1969). It is my view that “[w]hen both parents of a minor child are dead, and no legal guardian of the person has been appointed, the grandparent, who takes the child into his home and actually stands in loco parentis to the child becomes the natural guardian.... ” 1 Joseph H. Beale on Conflict of Laws. § 39.1, at 222 (1935). Clearly, R.B.’s grandmother has become so here.
¶ 31. Moreover, Miss.Code Ann. § 93-13-13 (1994) which governs the appointments of guardians, expressly sets out that minors over the age of fourteen (14) can select their guardian. R.B. is seventeen (17) and has lived with her grandmother since her parents’ death. As the next of kin is generally preferred when appointing guardians, Allen v. Peete, 25 Miss. 29, 31 (1852), the chancery court need only have asked if she wanted her grandmother appointed.
¶ 32. Since, and even prior to, the death of her parents, R.B. has lived with her grandmother. For eight years, her grandmother raised, supported, and provided for her education. After learning of the pregnancy and discussing the other alternatives, she testified that she consented because she believed it was in her granddaughter’s best interest. Having witnessed first hand her granddaughter’s difficulty in adjusting to the death of her mother, she believed abortion was the better choice because R.B. could not adjust to “giving up a child if she carried it nine months.... ” She also believed that though she was mature enough to make this decision, a baby would hinder her ability to complete her education, and once she was gone, she would be without help. Right or wrong, the decision was between them. Therefore, I would reverse.
McRAE, P.J., joins this opinion.